Plaintiff, Pro Se
125 High Street
Newton, MA, 02464

FILED
IN CLERKS OFFICE

2013 MAY 21 A 11: 53

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

Frederick L. Runyon, Plaintiff, ) Case No.: _____
vs. ) **COMPLAINT, INJUNCTIVE RELIEF,**
Wellington Management Company, ) **AND JURY DEMAND**
LLP; Anne Mahoney; Stephen )
Klar; Defendants )
)
)
)
)
)
_____)

## JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to the Age Discrimination in Employment Act (ADEA) (29 U.S.C. 621 et seq.), including the Older Workers Benefit Protection Act (OWBPA), and 28 U.S.C. § 1331,

2. Supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367;

3. Plaintiff is an individual and resident of Newton, Massachusetts. Plaintiff's date of birth is May 10, 1952.

Complaint - 1

4. Defendant Wellington Management Company, LLP is a corporation with a principal place of business in Boston, Massachusetts, USA; Defendant Anne Mahoney is an individual and resident of Massachusetts; Defendant Stephen Klar is an individual and resident of Massachusetts (hereafter collectively referred to as "Defendants").

5. On February 25, 2013, after having filed a complaint of age discrimination against Defendants with the Equal Employment Opportunity Commission, Plaintiff received from the Equal Employment Opportunity Commission a "NOTICE OF SUIT RIGHTS."

## FACTS AND CLAIMS:

6. Since approximately 1980, Plaintiff has worked in the field of graphic design. His experience in this industry has included positions with magazine and newspaper publishers, advertising agencies, design studios, and corporate in-house marketing communications departments.

7. Since approximately 1995, Plaintiff worked in management-level positions in the graphic design industry.

8. In or about August 1998, Plaintiff began his employment with Wellington Management Company, LLP ("the Company") as Assistant Vice President, Design Manager ("Assistant Vice

President"), reporting to the Director of the Company's Electronic Publishing Group, Joseph Kleber. At the time, he was approximately 46 years old.

9. In this newly-created position Plaintiff was responsible for developing an in-house capability for the design and execution of communications materials targeted to clients and prospects of the Company, as well as internal materials to support Human Resources and other business groups within the firm; establishing best practices for quality and productivity; managing staff designers; evaluating the performance of staff; and making hiring and firing decisions.

10. Plaintiff received formal management training through a number and variety of professional development programs administered by the firm's Human Resource Department.

11. In or about May 2003, in recognition of Plaintiff's successful performance, the Company promoted him to the position of Vice President.

12. In or about September 2006, in further recognition of his successful performance, the Company promoted him to the newly created position of Vice President, Corporate Design Manager. As part of this promotion, the Company significantly increased his annual salary and expanded his responsibilities to

include, among other functions, supervising the design of all of the company's communications materials across all forms of media, including web, print, multimedia, and video. A replacement, Tom Gill, was hired to fill the Design Manager position vacated by him as a result of this promotion.

13. In or about December 2008, the Company underwent a reduction-in-force. As part of this re-organization, the Company terminated the employment of, among other individuals, Mr. Kleber and Mr. Gill. As a result, Plaintiff's direct supervisor changed from Mr. Kleber to the Manager of Editorial Services, Brian Johnson, and Plaintiff was assigned direct-report responsibility for the designers formerly reporting to Mr. Gill. This re-organization did not change Plaintiff's purview and responsibilities as Corporate Design Manager.

14. From the start of his employment in June 2007 through approximately December 2009, Mr. Johnson reported to Director of Marketing Services, Lisa Finkel.

15. In or about December 2009, Ms. Finkel left the Company and was replaced by Anne Mahoney, at which point Mr. Johnson began reporting to Ms. Mahoney.

16. At all relevant times, Plaintiff was responsible for overseeing all of the Company's creative design work including

work produced by, among other individuals: Julianna Anderson; Donna DeAlmeida; Christine Green; Roseanne Hall; Lisa Hennigan; Mark Kopulos; Andrew Mahoney; Kimberly Olson; Phil Sandoval; Jeff St. Pierre; Wendy Scholes; and Catherine Pipes; as well as design work created for video and all creative design work produced in the Company's global offices.

17. In or about June 2010, Plaintiff had a meeting with Mr. Johnson to discuss workload and to determine what responsibilities might be delegated to staff.

18. During that meeting, Mr. Johnson suggested that Ms. DeAlmeida might be reluctant to assume greater responsibility because of her age, stating words to the effect of: "At this point in her career, I doubt she'd be interested in new challenges."  In another meeting later that same year, Mr. Johnson repeated a similar comment about Ms. Green.

19. Both Ms. DeAlmeida and Ms. Green are at least 50 years old.

20. On or about June 1, 2011, Mr. Johnson called Plaintiff to an unscheduled meeting with him and Ms. Mahoney, and Ms. Mahoney explained Plaintiff's position had been eliminated and his employment with the company was terminated.

21. At no point during this meeting did Mr. Johnson or Ms. Mahoney indicate to Plaintiff that his performance was a factor in the termination decision.

22. At no point prior to his termination did Mr. Johnson or Ms. Mahoney or anyone at the Company inform Plaintiff that his job was in jeopardy.

23. At no point prior to his termination was there any comment or suggestion that Plaintiff was lacking skills needed to perform his duties, or was not meeting management's expectations.

24. At no point prior to his termination was Plaintiff provided guidance regarding management's expectations of him, or offered training and/or development opportunities to acquire or improve skills the Company may have deemed necessary.

25. Plaintiff's termination became effective on or about June 15, 2011. At the time of the termination, he was 59 years old.

26. Also on June 1, 2011, the Company informed Ms. Green, Ms. Hall, and Susan Perkins ("the Affected Individuals") that their positions had been eliminated and their employment would be terminated.

27. Like Plaintiff, the Affected Individuals worked under the purview of Ms. Mahoney.


28. Like Plaintiff, Ms. Green, Ms. Hall, and Ms. Perkins are all over forty years old; Ms. Green and Ms. Hall are each at least fifty years old.

29. The Company offered Plaintiff a separation agreement ("the Agreement"), which included a severance payment in exchange for a release of legal claims.

30. The Company's Severance Policy (the "Police") sets forth eligibility requirements, which includes "job elimination."

31. The Policy sets forth a standardized formula for calculating the severance amount for employees who are terminated due to "job elimination."

32. The severance amount offered to Plaintiff as part of the Agreement is consistent with the standardized formula set forth in the Policy.

33. Plaintiff understood the Agreement to be non-negotiable and did not attempt to modify its terms.

34. The Agreement contains two separate provisions entitled "General Release of Claims," embodied in Section 6 and Appendix A, which are inconsistent with each other, creating confusion regarding the nature of the releases to which Plaintiff agreed.

35. The release contained in Section 6 does not refer to the Age Discrimination in Employment Act.

36. The release contained in Section 6 required Plaintiff to release the Company "from any and all … claims related to arising out of your employment or the termination of your employment …."

37. The release contained in Section 6 required Plaintiff to agree to not pursue any individual claim against the Company by filing a charge with any administrative agency.

38. The release contained in Section 6 excludes prospective claims.

39. The release contained in Appendix A referred to the Age Discrimination in Employment Act.

40. The release contained in Appendix A required me to "forever discharge Wellington … from any and all … claims related to or arising out of my employment or the termination of my employment with Wellington."

41. The release contained in Appendix A does not exclude prospective claims.

42. The body of the Agreement does not reference Appendix A.

43. The Agreement does not explain how Section 6 and Appendix A relate to each other, nor did the Company offer any such explanation to me.

44. Plaintiff has no legal training.

45. Upon information and belief, as part of the same employment termination program, Defendants offered a similar severance agreement to Ms. Green, Ms. Hall, and Ms. Perkins in accordance with published company policy.

46. The Company never provided Plaintiff with a list, as required by law, of the other employees in his class, unit, or group who were terminated in the same employment termination program and were asked to sign severance agreements.

47. The Agreement gave Plaintiff 21 days to consider its terms, rather than 45 days as required by law.

48. Plaintiff reasonably relied on the Company's representation that his position had been eliminated in deciding to sign the Agreement on or about June 14, 2011.

49. Following Plaintiff's termination, the Company temporarily re-assigned Ms. Anderson, Ms. DeAlmeida, Ms. Hennigan, and Ms. Scholes to report to Mr. Johnson, and temporarily re-assigned

Mr. Kopulos and Ms. Olson to report to Marketing Project Manager John Murphy.

50. In or about October 2011, the Department hired Betsy Salsman as Creative Manager.

51. Ms. Salsman is approximately 20 years younger than Plaintiff.

52. Ms. Salsman's primary duties are so similar to those performed by Plaintiff that they are essentially identical.

53. According to her resume, Ms. Salsman's job history and work experience are so similar to those of the Plaintiff that for practical purposes they are the same.

54. Ms. Salsman oversees the creative design work of the individuals and other groups whose work Plaintiff supervised before his termination.

55. The Company terminated Plaintiff and/or failed to promote him due to his age. If Plaintiff had known that the Company did not actually eliminate his position, but had in fact replaced or intended to replace Plaintiff with a younger employee to perform essentially the same duties and responsibilities as he performed, Plaintiff would not have signed the Agreement.

<div style="text-align:center">~~Exhaustion of Remedies~~</div>

**Exhaustion of Remedies**

56. On March 23, 2012, Plaintiff filed a complaint of discrimination against Defendants with the Massachusetts Commission Against Discrimination.

57. On September 26, 2012, the complaint was referred to the Equal Employment Opportunity Commission. On February 22, 2013, the EEOC issued a right to sue letter authorizing Plaintiff to bring his claims in federal court.

**COUNT 1 – Knowing and Willful Age Discrimination**

**Age Discrimination in Employment Act (29 U.S.C. § 621, et seq.)**

By terminating Plaintiff's employment based on his age and replacing him with a much younger employee, and by failing to promote Plaintiff based on his age, Defendants committed age discrimination, causing damages.

**CLAIM 2 – Age Discrimination**

**(M.G.L. c. 151B, § 4)**

By terminating Plaintiff's employment based on his age and replacing him with a much younger employee, and by failing to promote Plaintiff based on his age, Defendants committed knowing and willful age discrimination, causing damages.

### COUNT 3 – Fraudulent Inducement

By falsely representing to Plaintiff that they were eliminating his position, and knowing that in fact they were actually keeping his position and replacing him with a younger employee, Defendants knowingly induced Plaintiff through material misrepresentation to sign a release of claims, causing damages.

### COUNT 4 – Interference with Enjoyment of Rights Protected By Chapter 151B

**(Against Defendants Mahoney and Klar)**

By causing Plaintiff to be terminated based on his age and replaced with a much younger employee, and by causing Plaintiff not to be promoted based on his age, Defendants Mahoney and Klar interfered with Plaintiff's enjoyment of rights protected by Chapter 151B, in violation of M.G.L. c. 151B, § 4(4A), causing damages.

### COUNT 5 – Aiding and Abetting Age Discrimination

**(Against Defendants Mahoney and Klar)**

By causing Plaintiff to be terminated based on his age and replaced with a much younger employee, and by causing Plaintiff not to be promoted based on his age, Defendants Mahoney and Klar aided and abetted the Company's discriminatory treatment of

Plaintiff based on his age, in violation of M.G.L. c. 151B, § 4(5), causing damages.

## COUNT 6 - Declaratory Judgment

Due to the Defendants' fraudulently inducing Plaintiff to execute the Agreement, and due to Defendants' failure to provide a 45-day period to consider the agreement, and Defendants' failure to provide a list of the other employees in his class, unit, or group who were terminated in the same employment termination program and were asked to sign severance agreements, as required by the Age Discrimination in Employment Act, as amended by the Older Workers Benefits Protection Act, 29 U.S.C. §626, the Agreement is invalid and unenforceable as a waiver of Plaintiff's claims under the ADEA.

### PRAYER FOR RELIEF

1. WHEREFORE, Plaintiff respectfully prays for a judgment against Defendants for Declaratory Judgment and Compensatory Relief as the Court deems appropriate including:

2. Reinstatement of employment at a level equal to or above the position last held by Plaintiff, such reinstatement to be considered as uninterrupted employment for considerations of seniority, tenure, vacation qualifications, etc.

3. Damages in the form of back pay, front pay, and the monetary value of lost benefits of employment.

4. Liquidated damages as the law specifies for acts of discrimination based on age and/or for willful and knowing acts of discrimination based on age;

5. Punitive damages and/or liquidated damages as provided by state and federal law;

6. Costs and attorneys fees of this lawsuit, with interest;

7. Any other relief as the court deems appropriate.

Dated this __21__ day of May, 2013

*Frederick L. Runyon* (signature)
Frederick L. Runyon, Plaintiff
*Pro se*
125 High Street
Newton, MA 02464