UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FREDERICK L. RUNYON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WELLINGTON MANAGEMENT )<br>COMPANY, LLP, ANNE MAHONEY )<br>and STEPHEN KLAR, )<br>)<br>Defendants. )<br>) | CIVIL ACTION NO. 13-11236-DJC |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants Wellington Management Company, LLP ("Wellington"), Anne Mahoney ("Mahoney") and Stephen Klar ("Klar") have moved the Court pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss Counts I (as to Mahoney and Klar only), II, III, IV and V of the *Complaint, Injunctive Relief and Jury Demand* ("the Complaint") filed by Plaintiff Frederick L. Runyon ("Runyon"), a former Wellington employee. The Complaint alleges, *inter alia*, that Defendants laid Runyon off from his employment with Wellington on account of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA") and Massachusetts General Laws Chapter 151B, and fraudulently induced him to execute a general release of claims in exchange for money and benefits.

I. Facts Alleged in the Complaint

Accepting the allegations in the Complaint as true and construing all reasonable inferences in Runyon's favor for the purpose of this motion, Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998); Healy v. Henderson, 275 F. Supp. 2d 40, 41 (D. Mass.

2003), Runyon was employed by Wellington from 1998 until his discharge in June 2011. At the time of his discharge, Runyon was employed as a manager in Wellington's publications department. In that role he supervised the design and publication of marketing materials for Wellington's existing and prospective clients and internal materials for various business groups within Wellington. In December 2009, Mahoney became the Director of Marketing Services and Runyon's direct supervisor, Brian Johnson, began reporting to her. Mahoney and Johnson conducted the meeting at which Runyon was discharged. They told Runyon that his position was being eliminated but, according to Runyon, Wellington intended to fill the position with a younger individual. Runyon signed a severance agreement pursuant to which he was given money and benefits in exchange for a release of claims against Wellington and its employees. Other employees in Runyon's department also were laid off at the same time and given similar severance agreements. In October 2011, Wellington hired a younger woman into a position that Runyon alleges is identical to the one he vacated. The Complaint identifies Klar as a resident of Massachusetts, but does not contain any other allegations about him.[1]

On March 23, 2012, Runyon filed a charge with the Massachusetts Commission Against Discrimination ("MCAD") alleging that Wellington had discharged him on account of his age in violation of the ADEA and G.L. c. 151B. See Affidavit of Ilene Robinson Sunshine at Exhibit 1.[2] On July 11, 2012, the MCAD dismissed the charge on the grounds that Runyon had executed

---

[1] The Complaint also does not identify any individuals at Wellington who supposedly harbored discriminatory animus against Runyon or whether any such person or persons made, participated in or influenced the decision to lay him off.

[2] Although in considering a motion to dismiss, a court is generally limited to the consideration of the pleadings alone, an exception is made for public record documents, including decisions of administrative agencies, of which the Court may take judicial notice. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); Whitehead v. AM Int'l, Inc., 860 F. Supp. 1280 (N.D. Ill. 1994) (court properly considered EEOC charge attached to motion to dismiss).

a valid release of claims arising under G.L. c. 151B.[3] See Affidavit of Ilene Robinson Sunshine at Exhibit 2. The MCAD then referred Runyon's charge to the Equal Employment Opportunity Commission ("EEOC"). Runyon alleges that the EEOC issued him a "right to sue" letter on February 22, 2013. Runyon filed this action on May 21, 2013.

Count I alleges that the Defendants discharged Runyon in violation of the ADEA. Defendants seek dismissal of Count I as to Mahoney and Klar because individuals are not subject to suit under the ADEA. Counts II, IV and V allege that the Defendants' actions also constituted age discrimination in violation of G.L. c. 151B, and that Mahoney and Klar interfered with Runyon's rights and abetted Wellington's discrimination under that statute. Counts II, IV and V must be dismissed because Runyon executed a valid waiver of his c. 151B claims in exchange for payments and benefits of over $100,000. Fairly construed, Count III alleges that the Defendants fraudulently induced Runyon to execute the general release of claims. Count III is defective because Runyon has not stated a claim upon which relief can be granted.

II. Standard for Motion to Dismiss

A complaint must be dismissed for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). To withstand a motion under Fed. R. Civ. P. 12(b)(6), a complaint must provide fair notice to the defendants and contain enough factual allegations to state a claim for relief that is plausible on its face. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), citing

---

[3] The MCAD did not issue any findings with regard to the validity of the waiver of Runyon's federal ADEA claim.

3

Twombly, 550 U.S. at 555. A complaint does not state a claim for relief where the factual allegations do not support an inference of any more than the mere possibility of misconduct. Iqbal, 556 U.S. at 678-79; see also Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009).

When a defendant moves to dismiss for lack of federal subject matter jurisdiction, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007)(citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). Where the challenge to subject matter jurisdiction relies solely on the pleadings, the court takes the plaintiff's "jurisdictionally-significant facts as true" and assesses "whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001).

    A.    Count I Must Be Dismissed As To Mahoney and Klar Because There is No Individual Liability Under the ADEA

Count I alleges that each of the Defendants violated the ADEA by firing Runyon. The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge . . . or otherwise discriminate" based on age. 29 U.S.C. §623(a)(1). Section 630(f) of the ADEA defines an "employer" as, *inter alia*, "a person engaged in an industry affecting commerce who has twenty or more employees . . . " and "any agent of such a person." Non-employee "agents" of an employer – such as independent contractors – can create ADEA liability for the employer if they act as actual or apparent agents of the business, and can also be individually liable for age discrimination under Section 630. See, e.g., Brownlee v. Lear Siegler Mgmt. Servs. Corp., 15 F.3d 976, 978 (10th Cir. 1994)(discriminatory actions of agent may be imputed to the principal to render the principal liable for agent's statutory violations). However, it is well-established that while a managerial or supervisory employee may expose the employer to liability under the ADEA if he/she discriminates against another employee on the basis of age, such supervisor or

4

manager may not be held individually liable under that statute. See, e.g., El-Ramly v. Univ. of Haw., 1999 WL 369929, at *3 (9th Cir. May 18, 1999)(no individual liability under the ADEA as a matter of law); Sabouri v. Ohio Dep't of Educ., 1998 WL 57337, at *2 (6th Cir. Feb. 2, 1998)(same); Stults v. Conoco, Inc., 76 F.3d 651, 655 (5th Cir. 1996)("the ADEA provides no basis for individual liability for supervisory employees"); Matthews v. Rollins Hudig Hall Co., 72 F.3d 50, 52 n.2 (7th Cir. 1995)(individuals not liable under the ADEA); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511 (4th Cir. 1994)(vice president responsible for layoff decisions not liable under ADEA); Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993)(no individual liability under ADEA).

Although the First Circuit Court of Appeals has not squarely addressed the issue of individual liability under the ADEA, the courts in this district have repeatedly held that no such liability exists. See Edwards v. Bertucci's Italian Restaurant, 2013 WL 2096244, at *6 (D. Mass. May 13, 2013), citing Rivera-Tirado v. Autoridad de Energia Electrica, 663 F. Supp. 2d 36, 40 (D.P.R. 2009); Pabon-Ramirez v. MMM Health Care, 2013 WL 1797041, at *4 (D.P.R. April 29, 2013). See also Correa-Ruiz v. Fortuno, 573 F.3d 1, 7-8 (1st Cir. 2009)(affirming district court's finding, uncontested by plaintiff, that there is no individual liability under the ADEA).

Those cases all adopted the reasoning in Fantini v. Salem State Coll., 557 F.3d 22, 30 (1st Cir. 2009), which joined other circuits in holding that individual employees are not subject to liability under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., whose definition of "employer" is "nearly identical" to that in the ADEA. See U.S. EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1280 (7th Cir. 1995). Fantini noted that the exemption of smaller employers from coverage under Title VII signified Congress's intent not "to burden small entities with the costs associated with litigating discrimination claims." Fantini, 557 F.3d

at 29, quoting Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993), and concluded that "[i]f Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees." Id., quoting Miller, 991 F.2d at 587. Citing Miller, id. and others, the Court in Fantini concluded that "[w]e interpret the inclusion of agent in Title VII's definition of employer simply to establish a limit on an employer's liability for its employees' actions. [*citations omitted*] . . . While Title VII's definition of the term employer includes "any agent" of an employer, Congress's purpose was merely to import respondeat superior liability into Title VII. [*citations omitted*]. Fantini, 557 F.3d at 30.[4] Mahoney and Klar are not subject to suit under the ADEA, and Count I should be dismissed against them.[5]

      B.    Counts II, IV and V Must Be Dismissed Because Runyon Executed A Valid Waiver of Claims Arising Under G.L. c. 151B

Count II alleges that the Defendants violated Massachusetts General Laws Chapter 151B § 4. Fairly construed, Count II arises under G.L. c. 151B § 4 (1B), which provides that it shall be unlawful "[f]or an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, . . . , unless based upon a bona fide occupational qualification." Count IV and V allege that Mahoney and Klar violated G.L. c. 151B § 4 (4A), which make it unlawful "[f]or any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter . . ." and §4 (5), which makes it

---

[4] The First Circuit Court of Appeals employed the same reasoning in a recent case of first impression in which it found that there is no individual liability under the Americans With Disabilities Act, 42 U.S.C. § 12102 et seq. See Roman-Oliveras v. Puerto Rico Elec. Power Authority, 655 F.3d 43 (1st Cir. 2011).

[5] The claim against Mahoney and Klar also would fail under Fed. R. Civ. P. 12(b)(6). The Complaint does not allege that Mahoney did anything other than attend the meeting at which Runyon was discharged; there is no allegation that she made, participated in or influenced the decision to fire or, more importantly, that she harbored discriminatory animus against Runyon on account of his age or was influenced by someone else who did. The Complaint contains no allegations at all regarding Klar.

unlawful "[f]or any person . . . to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter . . ."

Runyon executed a severance agreement containing two separate general releases of claims.[6] Complaint at ¶¶ 29-34, 48. The release in Paragraph 6 of the agreement provides that

> "[i]n exchange for the promises set forth herein, you . . . hereby release and forever discharge Wellington Management Company LLP and its affiliates, and all of their respective partners, directors, officers, employees, agents, successors and assigns (the "Released Parties"), from any and all suits, claims, demands, debts, sums of money, damages, interest, attorneys' fees, expenses, actions, causes of action, judgments, accounts, promises, contracts, agreements, and any and all claims of law or in equity, whether now known or unknown, which you now have or ever have had against the Released Parties, or any of them, including, but not limited to, . . .Massachusetts General Laws Chapters 149 and 151B, and any other federal, state or local statute, regulation, ordinance or common law creating employment-related causes of action, and all claims related to or arising out of your employment or the termination of your employment with Wellington . . ."

The release in Appendix A of the agreement contains identical language except that it is written in the first person and recites as consideration "the promises made in the letter agreement between Wellington Management Company LLP and me . . ." See Sunshine Aff. Exhibit 3.

Runyon alleges that these waivers of his c. 151B claims are invalid because he was not afforded 45 days to consider whether to sign the severance agreement or provided with a memorandum containing certain information regarding the group of individuals who were laid off at the same time he was. Wellington recognizes that the ADEA (as amended in 1990 by the Older Workers Benefit Protection Act) prescribes such requirements in order to effectuate a

---

[6] The Defendants have filed an authenticated copy of the severance agreement with this motion. See Sunshine Affidavit at Exhibit 3. For the sake of economy, the Defendants have addressed their waiver argument in this motion to dismiss, which also addresses other counts of the Complaint. However, the Defendants recognize that the Court may deem it appropriate to convert that portion of the motion that relates to Counts II, IV and V to a motion for summary judgment, in accordance with Fed. Rule Civ. P. 12(d).

"knowing and voluntary" waiver of certain claims arising under that statute.[7] See 29 U.S.C. § 626(f). However, these statutory requirements do not apply to a waiver of claims arising under state law. See Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97 (1st Cir. 2003) (the waiver of a claim under c. 151B does not require any of the elements of an ADEA waiver); Duval v. Callaway Golf Ball Operations, Inc., 501 F. Supp. 2d 254 (D. Mass. 2007) (same).

An employer meets its burden of showing that a waiver of non-ADEA employment claims was knowing and voluntary, see Rivera-Flores v. Bristol-Meyers Squibb Caribbean, 112 F.3d 9, 12 (1st Cir. 1997), through an analysis of the following factors:

> 1) the plaintiff's education and business experience; 2) the amount of time the plaintiff had possession of or access to the agreement before signing it; 3) the role of the plaintiff in deciding the terms of the agreement; 4) the clarity of the agreement; 5) whether the plaintiff was represented by or consulted with an attorney; and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

Smart v. Gillette Co. Long-Term Disability Plan, 887 F. Supp. 383, 385-386 (D. Mass. 1995). aff'd, 70 F.3d 173, 181 (1st Cir. 1995); Larsen v. Simonds Indus., Inc., 337 F. Supp. 2d 331, 338 (D. Mass. 2004). In Smart, the court found that the plaintiff had validly waived her ERISA claims because the terms of the release were clear, she received a generous severance package, was college-educated, had ten years of professional corporate experience, possessed the release for at least three months, was involved in determining the severance terms, and had retained an attorney during her negotiations with the employer. In Melanson v. Browning-Ferris Indus., Inc., 281 F.3d 272, 276 & n.4 (1st Cir. 2002), the First Circuit Court of Appeals found a waiver of Title VII claims to be knowing and voluntary where the complainant was a high school

---

[7] Given the dispute over the validity of Runyon's waiver of his ADEA claim, Wellington has not moved to dismiss Count I as against it.

graduate, had been given 45 days to consider signing the agreement and had accepted a total of $1600 in severance pay that she was not otherwise entitled to.

The facts presented here are similar to those in Smart and far more compelling than those in <u>Melanson</u>. By Runyon's own allegation, he has almost 20 years of corporate managerial experience. Wellington provided him with formal management training and promoted him to the position of Vice President. <u>Complaint</u> at ¶¶ 7, 10. The severance agreement is clear on its face that it applied to any claim Runyon had under c. 151B. The agreement advised Runyon in both Paragraph 10 and Appendix A that he had the right to "and should" consult an attorney. And while Runyon was given 21 days to consider the agreement, he elected to sign it on June 14, 2011, two weeks after he had received it. Finally, if Runyon believed that he had made a mistake in signing, he also had the right to revoke his signature within one week. By any measure, the consideration that Runyon received – a full year of salary in the amount of $102,000 and outplacement assistance at a local firm – was extremely generous. If Runyon had not signed the severance agreement, Wellington would not have been obligated to pay him anything.

Runyon does not allege that he did not understand the agreement to effectuate a waiver of claims under c. 151B or point to any specific language that he claims was confusing on that point. To the contrary, the agreement recites that by signing, Runyon was indicating his "understanding and acceptance" of its terms. To support his current claim of confusion, Runyon points to minor inconsistencies in the text of the two releases; specifically, that only one of them refers to claims arising under the ADEA and recites that it does not apply to claims arising after the agreement was signed. However, Runyon does not allege any inconsistency at all regarding

9

the waiver of claims under c. 151B; both releases cover such claims expressly, clearly and in identical language.

The MCAD, applying virtually the same standard articulated by the First Circuit, see Berman v. Northeast Fed. Sav. Bank, 10 Mass. Discrim. L. Rptr. 1582 (1988), concluded that Runyon's waiver of his c. 151B claims was valid:

> The language of the Agreement is clear and unambiguous. The language in the release and settlement is written so that it can easily be understood by a layman. Runyon was employed as a Corporate Design Manager with Wellington. This position requires both education and experience, and Runyon is capable of understanding what he signed. The Agreement included language acknowledging that Runyon had carefully read and fully understood the provisions of the Agreement, and that he had been advised to seek legal counsel. In addition, Runyon was given a reasonable period of time (21 days) in which to decide whether or not to sign the Agreement and Release, and upon signature [sic], he was allowed an additional 7 day period within which to revoke it. Respondent asserts, and Complainant has not disputed that he accepted the severance payment set forth in the Agreement. For these reasons, I find that Runyon's signing of the Agreement was knowing and voluntary and that the Agreement and release of claims is valid and that there is no public interest to be served in allowing the Complaint to remain open.

Because Runyon has waived his claims under c. 151B, Counts II, IV and V should be dismissed.[8]

    C.    <u>Count III Fails to State A Claim For Fraud</u>

Count III alleges that the Defendants fraudulently induced Runyon to execute the severance agreement by falsely telling him that Wellington was eliminating his position. This

---

[8] Even viewed substantively, Counts II, IV and V would fail to state a claim against Mahoney and Klar. At the outset, there are no allegations at all regarding Klar. The only action alleged by Mahoney is that she attended the meeting at which Runyon was notified of his layoff. There is no suggestion that she interfered with Runyon's right to file an MCAD charge, which he did more than nine months after his layoff. And to hold Mahoney liable as an aider and abettor under c. 151B, Runyon could not rely solely on his unstated assumption that Mahoney participated in his termination. Instead, he would have to allege that Mahoney committed a "wholly individual and distinct wrong" which is "separate from the claim in main." Harmon v. Malden Hosp., 19 Mass. Discrim. L. Rptr. 157, 158 (1997); see also Hayes v. Henri Bendel, 945 F. Supp. 374, 379 n.11 (D. Mass. 1996); Mahoney's mere "acquiescence and presence" in Wellington's alleged discriminatory termination is insufficient to hold her individually liable under c. 151B. Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 481 (1994). The Complaint contains no such allegations.

count should be dismissed because Runyon has not satisfied his burden of pleading facts that articulate a claim for fraud.

To state a claim for fraud, the plaintiff must allege facts making it plausible that (1) the misrepresentation was material; (2) the defendant knew the representation was false at the time it was made; (3) the defendant made the false misrepresentation for the purposes of inducing the plaintiff to act in reliance on it; (4) the plaintiff actually and reasonably relied on the misrepresentation; and (5) the plaintiff was damaged. See, e.g.. Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77 (1991). The Complaint does not satisfy these burdens.

The only allegations in the Complaint that relate to Runyon's fraud claim are that Mahoney told him on June 1, 2011 that Wellington was eliminating his position (Complaint at ¶ 20), that he relied on that statement when he signed his severance agreement two weeks later, and that he would not have signed the agreement "[i]f Plaintiff had known that the Company did not actually eliminate his position, but had in fact replaced or intended to replace Plaintiff with a younger employee to perform essentially the same duties and responsibilities as he performed . . ." (Complaint at ¶ 48).

Under the pleading standard articulated in Iqbal, Runyon cannot state a claim for fraud merely by speculating or alleging the conclusion that Wellington intended at the operative moment of the possible fraud to hire a younger person into the same job that he held. Instead, he must articulate the factual basis for that assertion by showing that Wellington knew *on June 1, 2011* that it intended to backfill Runyon's exact position with a significantly younger person. The Complaint contains no allegations that could satisfy Runyon's pleading burden.[9] Runyon's

---

[9] On the merits of this claim, Wellington would offer evidence that the backfilled position Runyon refers to in the Complaint was substantively different from his former role, that the individual Wellington hired had a background and experience that was markedly different from Runyon's, and, most important, that Wellington had not made any hiring decisions as of June 1, 2011.

11

allegations are similar to those in Corcoran v. Saxon Mortg. Servs., Inc., No. 09-11468-NMG, 2010 WL 2106179, at *5 (D. Mass. May 24, 2010), in which the Court found "woefully inadequate" plaintiff's attempt to plead fraud by alleging that he was "induced by intentional misrepresentations, fraud, and deceit perpetrated by the Defendant" and that he "relied on statements made by the Defendant regarding a cap on the interest rate that was false." Corcoran, 2010 WL 2106179, at *5. Absent the essential element that Wellington knew at the time it laid Runyon off that it intended to replace him with a younger person to perform the same work – in short, the very essence of the alleged fraud – his claim cannot survive. Count III therefore should be dismissed.

III. Conclusion

For all of the foregoing reasons, the Defendants request that the Court dismiss Counts I (as to Mahoney and Klar), II, III, IV and V of the Complaint.

> WELLINGTON MANAGEMENT COMPANY LLP, ANNE MAHONEY and STEPHEN KLAR,
>
> By their attorneys,
>
> /s/ Ilene Robinson Sunshine
> Ilene Robinson Sunshine (BBO #423000)
> *isunshine@sandw.com*
> SULLIVAN & WORCESTER LLP
> One Post Office Square
> Boston, MA  02109
> (617) 338-2800 (phone)
> (617) 338-2880 (fax)

Dated:  June 24, 2013

## Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 24, 2013.

/s/  Ilene Robinson Sunshine