FILED
IN CLERKS OFFICE
2013 JUL 23 P 3:52
U.S. DISTRICT COURT
DISTRICT OF MASS.

Plaintiff, Pro Se
125 High Street
Newton, MA, 02464

UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| Frederick L. Runyon, Plaintiff, | **CIVIL ACTION NO. 13-11236-DJC** |
| vs. | |
| Wellington Management Company, LLP; Anne Mahoney; Stephen Klar; Defendants | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND (6)** |

**Introduction**

Defendants Wellington Management Company, LLP ("Wellington"), Anne Mahoney ("Mahoney"), and Stephen Klar ("Klar"), (collectively "the Defendants"), by their counsel, have moved the Court pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss Counts I (as to Mahoney and Klar only), II, III, IV and V of the Complaint, Injunctive Relief and Jury Demand filed by Plaintiff (the "Complaint").

Supporting this action, Defendants have submitted to the Court a Motion to Dismiss (the "Motion"), a Memorandum in Support of Motion to Dismiss (the "Memorandum"), and an

Affidavit of Ilene Robinson Sunshine (the "Defendants' Affidavit").

Plaintiff notes first that Defendants have not moved to dismiss Count I as to Wellington Management Company, LLP; thus, this case will move forward regardless of this Court's ruling on Defendants' motion.[1]

Defendants seek dismissal of all claims except the OWBPA claim against Wellington for two reasons: first, they claim that Plaintiff signed a valid waiver of his claims under Chapter 151B, and second, that Plaintiff failed to allege a claim for fraudulent inducement. Both arguments are wrong.

Plaintiff includes with this Motion in Opposition the Affidavit of Frederick L. Runyon containing factual matter supporting Plaintiff's claims.

**Standard for Motion to Dismiss**

As Ocasio-Hernández makes clear, dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint satisfies the two-pronged requirement in Rule 8(a)(2) of "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 8 (citing Fed.R.Civ.P. 8(a)(2)).

[1] Plaintiff does not contest Defendants' motion to dismiss Count I as to Mahoney and Klar only.

As to the first prong, a "short and plain" statement "needs only enough detail to provide a defendant with `fair notice of what the ... claim is and the grounds upon which it rests.'" Id. (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). In order to satisfy the second prong of showing an entitlement to relief, "a complaint must contain enough factual material `to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" Id. (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). Sisco v. DLA PIPER LLP, 833 F. Supp. 2d 133 - Dist. Court, D. Massachusetts 2011

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal citation and quotation marks omitted). To establish facial plausibility, the complaint must provide "'enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007)). This plausibility standard does not equal a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949

(internal citation omitted). Although legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Id. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

Even where a complaint is not "a model of the careful drafter's art, . . . under the Federal Rules of Civil Procedure, a complaint need not pin [a] plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." Skinner v. Switzer, 131 S.Ct. 1289, 179 L. Ed. 2d 233, 242 (2011) (reversing and remanding dismissal of plaintiff's § 1983 case), referencing 5 C. Wright & A. Miller, Federal Practice & Procedure § 1219, pp. 277-278 (3d ed. 2004 and Supp. 2010).

Under Rule 12(b)(6), dismissal is proper only where plaintiff cannot possibly state a cognizable claim, and cannot cure a defect in the complaint through amendment.
In deciding a motion under Rule 12(b)(6), the court must decide whether the facts alleged, if true, would entitle the plaintiff to some form of legal remedy. Unless the answer is unequivocally

"no," the motion must be denied. Conley v. Gibson, 355 U.S. 41, 45-56 (1957); De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978).

By expressly stating that leave to amend "shall be freely given when justice so requires," Rule 15(a) severely restricts the court's power to dismiss a complaint. Leave to amend should be denied only if the court determines that "allegations of other facts consistent with the challenged pleading could not possibly cure the defect." Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1988) (emphasis added).

If the Court finds that Plaintiffs' complaints are insufficient, the appropriate remedy is amendment, not dismissal

## I. The Complaint States A Valid Claim Under Chapter 151B Because Plaintiff's Waiver Was Induced By Fraud And It Did Not Comply with The Older Workers' Benefit Protection Act.

Plaintiff acknowledges he signed a document that, on its face, appears to waive his right to bring a claim under Chapter 151B against Defendants. The waiver is invalid, however, for three reasons: first, Defendants' misrepresented to Plaintiff that he was being laid off because his position had been eliminated, when, in fact, it had not been eliminated; second thus, Plaintiff's waiver was not "knowing and voluntary" under a

totality of the circumstances test; third, Defendants' failed to comply with the requirements of the OWBPA.

A. The Waiver Was Invalid Because It Was Induced By Fraud.

As Defendant correctly explains, To state a claim for fraud, the plaintiff must allege facts making it plausible that (1) the misrepresentation was material; (2) the defendant knew the representation was false at the time it was made; (3) the defendant made the false misrepresentation for the purposes of inducing the plaintiff to act in reliance on it; (4) the plaintiff actually and reasonably relied on the misrepresentation; and (5) the plaintiff was damaged. See,e.g. Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77 (1991). Defendants are wrong, however, that Plaintiff's complaint fails to allege a claim of fraud.

i. Material Misrepresentation

Manager and decision-maker Mahoney told Plaintiff that his position had been eliminated and that he would be offered a severance package in exchange for waiving his claims. (Cite to Complaint.) This was clearly a material statement. Basic, Inc.

---

The facts supporting the argument that the waiver is invalid because it was induced by fraud are the same facts supporting the separate claim for fraudulent inducement.

v. Levinson, 485 U.S. 224, 232, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (statement is material if it would have "significantly altered the total mix of information made available").

She knew at the time she made that statement that it was a material misrepresentation, and that in fact she already planned to replace him.

ii. Representation Was False.

Four months after Plaintiff was terminated, Salsman was hired either into the Plaintiff's now vacant position, with a slightly modified job title ("Creative Manager" instead of "Corporate Design Manager"), or Mahoney had gone through the formal process of creating a position that fills the same function as the Plaintiff's position, which Mahoney stated was eliminated. In either case, Mahoney's statement that Plaintiff's position was eliminated was false and Mahoney knew it.

First, Wellington Knew That It Had Not, Substantively, Eliminated Plaintiff's Position. Plaintiff knows from thirteen years as a Manager with Wellington, including experience formalizing new job descriptions, that the process for creating a new position and hiring into it is time consuming. See Affidavit of Frederick L. Runyon, ("Runyon Aff."), attached

hereto, at Exhibit One[4]. The process includes informal preliminary discussions with superiors, their approval to proceed, the crafting of a job description (entailing a back and forth process between managers and superiors that typically takes weeks), formal submission for approval to a management committee that meets infrequently (the "Compensation Committee"), posting the open position internally, working with outside Placement Firms to identify potential external candidates, scheduling preliminary interviews, then expanded interviews (often requiring multiple visits by candidates), extension of a formal job offer, negotiation or acceptance, a rigorous background check, then agreement on a start date that allows candidate to provide a minimum of two weeks notice, often more, to their current employer. (Runyon Aff., Exhibit One). That whole process can take three or four months on a fast track. Plaintiff can provide documentation to support that assertion. Runyon Aff.

Following Plaintiff's termination, staff that reported to him were not given anyone to report to permanently until Salsman was hired. Runyon Aff., Exhibit One)

That sequence of events strongly indicates that at the time Plaintiff was terminated the only plan for managing those staff

---

[4] Dates on documents in Exhibit One show a process that took ten months.

needs was to hire a replacement manager to whom the designers would be permanently assigned.

It defies credibility for Mahoney and/or Klar to claim they did not have a plan in place to replace Plaintiff at the time they terminated his employment and told him his position had been eliminated.

Moreover, a comparison of Plaintiff's resume and Salsman's resume will show an extremely close equivalency between Plaintiff's experience and Salsman's experience. See Runyon Aff., at Exhibit Two.

Salsman's job title is "Creative Manager." Plaintiff's job title was "Corporate Design Manager." The job description for "Corporate Design Manager" makes very clear that Plaintiff's responsibilities for the direction and oversight of Wellington's creative product were comprehensive, and included all creative work in all media in all the firm's global offices. See Runyon Aff., at Exhibit Three. It is highly unlikely that Salsman's responsibilities differ in any meaningful way.

At no point prior to his termination was there any comment or suggestion that Plaintiff was lacking skills needed to perform his duties, or was not meeting management's expectations. At no point prior to his termination was Plaintiff

provided guidance regarding management's expectations of him, or offered training and/or development opportunities to acquire or improve skills the Company may have deemed necessary.

iii. Wellington Made The Misrepresentation For The Purpose Of Plaintiff Relying On It In Deciding To Sign His Severance Agreement and Waive His Claims Under Chapter 151B.

The allegations create the reasonable inference that the Defendants intended that the misrepresentation regarding the elimination of Plaintiff's position would induce Plaintiff to sign the release they expected would shield them from accountability for their discriminatory actions. It is without dispute that Defendants represented that his position had been eliminated. This was the entire reason for his termination and the offer of his severance package. More information about the Defendant's motivation behind the representation can only be obtained through discovery.

It is also without dispute that Plaintiff relied on the representation that his position had been eliminated to sign away his right to bring a Chapter 151B claim. The involuntary waiver of a legal remedy, of course, constitutes damages.

Plaintiff acknowledges that some of the facts recited above are only contained in his affidavit, filed contemporaneously with

this opposition, and not in the original complaint. As explained *infra*, Plaintiff requests leave to amend his complaint to include such facts if the Court deems necessary.

## II. Plaintiff's Waiver of His Chapter 151B Rights Is Invalid Because It Was Not Knowing and Voluntary.

Applying the Totality of Circumstance approach to determine validity as to state law, it is clear that Plaintiff did not knowingly and voluntarily waive his Chapter 151B rights.

A court must examine the totality of the circumstances surrounding the signature, including such matters as: (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and *(8) whether the employee's release was induced by improper conduct on the defendant's part.*[emphasis added] Howell v. Motorola, Inc., 633 F. 3d 552 - Court of Appeals, 7th Circuit 2011

If a release meets the minimum standards set by the OWBPA, further inquiry is required to decide whether the release was executed knowingly and voluntarily. As a matter of law, the OWBPA provides that it's requirements set only a minimum standard. Wastak at 295 n. 8. Legislative history states that once the minimum requirement has been met, a court may proceed to determine whether the execution of a waiver is "knowing and voluntary." Id. (Citing S. Rep. No. 101-263, at 32 (1990)). The "totality of the circumstances" approach is used by the Third Circuit to make such a determination. See Wastak at 295. Ricciardi v. Electronic Data Systems Corporation, Dist. Court, ED Pennsylvania 2007

Current EEOC rules("Understanding Waivers Of Discrimination Claims In Employee Severance Agreements") provide the following guidance:

"7. Are there other factors that may make a waiver of age claims invalid?

Yes. Even when a waiver complies with OWBPA's requirements (see Question and Answer 6 above), a waiver of age claims, like waivers of Title VII and other discrimination claims, will be invalid and unenforceable if an employer used fraud, undue influence, or other improper conduct to coerce the employee to sign it, or if it contains a material mistake, omission, or

misstatement.

Example 8: An employee who was told that his termination resulted from "reorganization" signed a waiver in exchange for severance pay. After a younger person was hired to do his former job, he filed a lawsuit alleging age discrimination. The company then changed its position and claimed that the real reason for the employee's discharge was his poor performance. The employee argued that his waiver was invalid due to fraud and that if he had known that he was being terminated because of alleged poor performance, he would have suspected age discrimination and would not have signed the waiver. The court held that fraud was a sufficient reason for finding the waiver invalid.[23]"

Plaintiff had no input in negotiating the terms of the release, but much more importantly, Plaintiff was induced to sign the release by improper conduct on the Defendants' part. (See arguments under "Material Misrepresentation" section preceding.)

Therefore, the release in question should be deemed invalid.

## III. The Court Should Apply The Requirements of The OWBPA To Plaintiff's Chapter 151B Claim, Or Certify The Question to The Massachusetts Supreme Judicial Court.

While some Federal Courts have declined to use OWBPA requirements to determine the validity of a Release of Claims under MGL 151B, no Massachusetts court has squarely addressed the question.

It is likely, if not highly probable, that the Massachusetts Supreme Judicial Court would find that the requirements of the OWBPA apply to age discrimination claims under Chapter 151B. The SJC has explained: "It is our practice to apply Federal case law construing the Federal anti-discrimination statutes in interpreting G.L.c. 151B. See, e.g., Wheelock College v. Massachusetts Comm'n Against Discrimination, 371 Mass. 130, 135-139 (1976). We turn therefore to the Federal cases." Wheatley v. American Telephone & Telegraph Co., 636 NE 2d 265 - Mass/ Supreme Judicial Court 1994. Additionally, the Legislature has instructed that Chapter 151B "shall be construed liberally for the accomplishment of its purposes." M.G.L. c. 151B, § 9.

Therefore the Court should rule that the OWBPA requirements for a valid release of claims apply to M.G.L. 151B.

Alternatively, Plaintiff petitions the Court to certify to the Massachusetts Supreme Judicial Court (the "SJC"), under the Uniform Certification of Questions of Law Rule, the question of applicability of The Older Workers Benefit Protection Act to Chapter 151B age discrimination claims. If the SJC determines

that OWBPA requirements pertain to Massachusetts Law, the Release of Claims will be invalid as to state law for failing to meet those requirements.[1]

## IV. REQUEST TO AMEND COMPLAINT

If the Court determines that the Complaint does not allege a claim under Chapter 151B, Plaintiff respectfully asks for the Court's approval to Amend the Complaint to supplement the claim with sufficient factual information to remedy any deficiency, and to correct other inadequacies.

Dated this 23 day of July, 2013

Frederick L. Runyon, Plaintiff
*Pro se*
125 High Street
Newton, MA 02464
617-817-2466

[1] If the Release of Claims is deemed invalid as to state law for any reason, Defendants' Motion to Dismiss Counts II, IV, and V on the grounds that Plaintiff signed a Release of Claims must be denied.

Certificate of Service

I hereby certify that paper copies of this document(s) will be sent by First Class U.S. Mail to the attorneys for the Defendants, represented collectively by Ilene Robinson Sunshine of Sullivan and Worcester LLP, Boston, MA.

Frederick L. Runyon, Plaintiff
*Pro se*