UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| FREDERICK L. RUNYON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 13-11236-DJC |
| | ) | |
| WELLINGTON MANAGEMENT | ) | |
| COMPANY, LLP, ANNE MAHONEY | ) | |
| and STEPHEN KLAR, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT
AS TO THE INDIVIDUAL DEFENDANTS**

Defendants, Anne Mahoney ("Mahoney") and Stephen Klar ("Klar") have moved the

Court pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Counts 3, 4 and 5 of the *Amended*

*Complaint, Injunctive Relief and Jury Demand* ("the Amended Complaint") filed by Plaintiff

Frederick L. Runyon ("Runyon"), a former employee of  Defendant Wellington Management

Company, LLP ("Wellington").  The essence of the Amended Complaint is Runyon's claim that

Wellington laid him off in June 2011 on account of his age, in violation of the Age

Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA") and Massachusetts

General Laws Chapter 151B, and then fraudulently induced him to execute a general release of

claims in exchange for a year of severance pay.[1]  Runyon attempts to plead derivative claims

against Wellington employees Mahoney and Klar for participating in Wellington's alleged fraud,

interfering with his rights under ch. 151B and aiding and abetting Wellington's alleged violation

---

[1] Wellington does not participate in this motion.

of that statute.   Despite having had a second bite at the pleading apple, Runyon still fails to state

any viable claims against Mahoney or Klar.

     I.    <u>Facts Alleged in the Original Complaint</u>

Accepting the allegations in the Complaint as true and construing all reasonable

inferences in Runyon's favor for the purpose of this motion, <u>Beddall v. State St. Bank & Trust</u>

<u>Co.</u>, 137 F.3d 12, 16 (1st Cir. 1998); <u>Healy v. Henderson</u>, 275 F. Supp. 2d 40, 41 (D. Mass.

2003), Runyon alleged in his original Complaint that he was employed by Wellington from 1998

until his discharge in June 2011.   At the time of his discharge, Runyon was employed as a

manager in Wellington's publications department.   In December 2009, Runyon began reporting

indirectly to Mahoney through Runyon's direct supervisor, Brian Johnson.   Mahoney and

Johnson conducted the meeting at which Runyon was discharged.   They told Runyon that his

position was being eliminated but, according to Runyon, this was a pretext to disguise

Wellington's intention to fill the position with a younger individual.   Runyon subsequently

signed a severance agreement pursuant to which Wellington paid him salary continuation of over

$100,000 in exchange for a general release of claims against Wellington and its employees.   In

October 2011, Wellington hired a younger woman into a position that Runyon alleges (and

Wellington denies) is identical to the one he vacated.

> The only references to Mahoney and Klar in the Complaint were the following:
>
> Par. 4.   . . . Defendant Anne Mahoney is an individual and resident of Massachusetts; Defendant Stephen Klar is an individual and resident of Massachusetts . . .
>
> Par. 15.  In or about December 2009, Ms. Finkel left the Company and was replaced by Anne Mahoney, at which point Mr. Johnson [Runyon's supervisor] began reporting to Ms. Mahoney.
>
> Par. 20.  On or about June 1, 2011, Mr. Johnson called Plaintiff to an unscheduled meeting with him and Ms. Mahoney, and Ms. Mahoney explained Plaintiff's position had been eliminated and his employment with the company was terminated.

> Par. 21.  At no point during this meeting did Mr. Johnson or Ms. Mahoney indicate to Plaintiff that his performance was a factor in the termination decision.

> Par. 22.  At no point prior to his termination did Mr. Johnson or Ms. Mahoney or anyone at the Company inform Plaintiff that his job was in jeopardy.

> Par. 27.  Like Plaintiff, the [three other employees in Runyon's group whose positions were eliminated at the same time as his] worked under the purview of Ms. Mahoney.

The Defendants moved to dismiss certain counts of the Complaint on various grounds, including that the individual defendants cannot be liable under the ADEA, the Complaint failed to state claims against them, and Runyon's release constituted a valid waiver of his claims under ch. 151B.  The Court dismissed the ADEA claim against Mahoney and Klar.  As to the fraud claim, the Court ruled that "Runyon has alleged no facts from which the Court can infer that Mahoney, the person whom he alleges informed him that his position had been eliminated, knew or should have known on June 1, 2011 that Runyon's position was not being eliminated."  The Court did not address the sufficiency of the fraud claim against Klar.  The Court also found that the validity of the waiver of Runyon's age discrimination claim under ch. 151B presented triable factual issues but did not address whether, notwithstanding this, Runyon had stated a viable ch. 151B claim against Mahoney or Klar.  The Court granted Runyon's request to file an Amended Complaint, which he did on March 26, 2014.

II.  The Amended Complaint

Count 3 of the Amended Complaint contains a new section (Paragraphs 61 through 81) that purports to describe Wellington's general hiring practices, compares Runyon's work experience and job duties at Wellington with those of his alleged replacement, and concludes that there is no substantial difference in their experience or positions at Wellington.  The Amended Complaint contains no additional allegations regarding Klar and adds only the following allegations as to Mahoney:

3

Par. 64.  Plaintiff's thirty two *[sic]* year old replacement, Betsy Salsman ("Salsman") began employment at Wellington three months after Plaintiff was terminated.  That fact indicates that Mahoney had planned to replace Plaintiff some time before telling him his position was being eliminated.

Par. 66.  On the same date that Plaintiff was terminated, the Web Strategies Team, also in Mahoney's group, was eliminated.  The two web designers from that group, whose creative work Plaintiff supervised, were temporarily assigned to report to John Murphy, a Project Manager in Mahoney's group.

Par. 68.  That those designers were given only temporary reporting assignments after Plaintiff's termination raises the reasonable inference that before telling Plaintiff his position was being eliminated, Mahoney had plans to hire a replacement to whom those designers would be permanently assigned.

Par. 79.  The totality of the facts described in [the new allegations in Count 3] indicates that when Mahoney told the Plaintiff his position was being eliminated, she knew the representation was false.

Par. 80.  That misrepresentation was material.  Defendants intended that misrepresentation to induce Plaintiff to sign the release, which they expected would shield them from accountability for their discriminatory actions.  Having no reason to disbelieve what he was told, Plaintiff actually and reasonably relied on Mahoney's statements when he signed the release, and by that reliance he was damaged with the loss of employment.

III.     The Amended Complaint Must Be Dismissed As To Mahoney and Klar

To withstand a motion under Fed. R. Civ. P. 12(b)(6), a complaint must provide fair notice to the defendants and contain enough factual allegations to state a claim for relief that is plausible on its face.  See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), citing Twombly, 550 U.S. at 555.  A complaint does not state a claim for relief where the factual allegations do not support an inference of any more than the mere possibility of misconduct.  Iqbal, 556 U.S. at 678-79; see also Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009).

A.      Counts 3, 4 and 5 Fail to State a Claim Against Klar

Like Runyon's original pleading, the Amended Complaint contains *no allegations at all* regarding Klar other than that he resides in Massachusetts.  Therefore, while Count 3 names Klar as a participant in the alleged fraud, Count 4 alleges that he interfered with Runyon's rights under ch. 151B and Count 5 names him as an aider and abettor of Wellington's alleged age discrimination, none of these counts against him can survive since there is no allegation that he engaged in any conduct at all, much less any that violated any of Runyon's rights.  Klar must be fully and finally dismissed as a defendant in this action.

B.      None of Counts 3, 4 or 5 States a Claim Against Mahoney

1.  The Amended Complaint Still Fails To Articulate Mahoney's Role in the Alleged Fraud

In its ruling on the Defendants' motion to dismiss the fraud claim in Runyon's original Complaint, the Court articulated the elements that Runyon must plead:  "A plaintiff must allege that the defendant: (1) made a false representation of material fact (2) with knowledge or recklessness as to its falsity (3) for the purpose of inducing plaintiff to act, (4) and that the plaintiff reasonably relied upon the representation as true and acted upon it (5) to its detriment. (citations omitted).  As to the second element, a plaintiff must demonstrate that the defendant's fraudulent intent was contemporaneous with the misrepresentation. (citations omitted)."

The Court gave Runyon leave to supplement his Complaint with factual allegations specifically demonstrating that Mahoney knew or should have known on the date she notified Runyon that his position had been eliminated that she was uttering a falsehood.  Apparently unable to do so, Runyon has instead set forth allegations regarding his role in what he claims were Wellington's hiring practices.  The role Runyon describes consisted solely of seeking approval from management to create a new positions and writing descriptions for those jobs.

And the only specific experience he recounts involved the filling of his own managerial role in

2006, five years before the events underlying this case.  Runyon then supplements this general

historic information with assumptions rather than facts:  First, Runyon assumes that the hiring

process he had only limited experience with was still in effect and utilized in the case of the

hiring of his alleged replacement.  Second, Runyon assumes that this hiring process (which he

characterizes as "time consuming and burdensome") could not realistically have been completed

between the time he was discharged and the time his alleged replacement was hired.  Runyon

then bootstraps onto these assumptions to raise an inference that Mahoney "had planned to

replace [him] some time before telling him his position was being eliminated." (Amended

Complaint Par. 64).

   None of Runyon's allegations regarding Wellington's hiring practices has any direct or

even tangential relationship to the issue of Mahoney's state of mind on the operative date.

Moreover, Runyon's reliance on assumptions rather than facts to plead fraud by Mahoney

transgresses the well-established principles that threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, are insufficient to withstand a motion to

dismiss, Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), citing Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 555 (2007) and that a complaint does not state a claim for relief where the factual

allegations do not support an inference of any more than the mere possibility of misconduct.

Iqbal, 556 U.S. at 678-79; see also Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009).

Despite having had a second chance to plead fraud against Mahoney, Runyon has failed to raise

an inference of what Mahoney knew or should have known as of June 1, 2011.

   The defects in the amended Count 3 are not limited to the failure to allege facts that

would raise an inference of Mahoney's knowledge on the operative date.  The Amended

Complaint is also silent as to the third and fifth element of fraud -- that Mahoney's alleged

misrepresentation was made for the purpose of inducing Runyon to sign a severance agreement,

and that he was injured by doing so.  On those points, the Amended Complaint claims only that

Mahoney told Runyon that his employment was terminated; there is no allegation that she had

any interest in whether Runyon signed a severance agreement, much less that she did anything

that would constitute an inducement for him to sign.  And Runyon can hardly claim that he was

injured by signing the agreement, since his employment was terminated regardless of whether he

signed.  By signing, he received over $100,000 from Wellington.  Had he refused to sign, he

would have received nothing and still would not have his job.  Runyon has not made out a fraud

claim against Mahoney.

> 2.  There Are No Factual Allegations That Mahoney Interfered With
>     Runyon's Rights Under ch. 151B

Count 4 alleges that Mahoney violated  G.L. c. 151B § 4 (4A), which make it unlawful

"[f]or any person to coerce, intimidate, threaten, or interfere with another person in the exercise

or enjoyment of any right granted or protected by this chapter . . ."  There is no allegation in the

Amended Complaint that Mahoney engaged in any conduct or took any action that could give

rise to such a claim.  As noted, the Amended Complaint does not allege that Mahoney did

anything other than attend the meeting at which Runyon was discharged; there is no allegation

that she made, participated in or influenced the decision to fire him or, more importantly, that she

harbored discriminatory animus against Runyon on account of his age or was influenced by

anyone else who did.  Count 4 should be dismissed as to Mahoney.

> 3.  Mahoney Cannot Be Liable for Aiding and Abetting

In addition to the allegation that Mahoney directly violated ch. 151B, Count 5 claims that

she also violated §4 (5) of that statute, which makes it unlawful "[f]or any person . . . to aid, abet,

incite, compel or coerce the doing of any of the acts forbidden under this chapter . . ."  To hold

Mahoney liable as an aider and abettor under c. 151B, Runyon could not rely solely on the

unstated assumption that Mahoney played some role in Wellington's firing of him that he claims

was unlawfully motivated by age animus.  Instead, he would have to allege that Mahoney

intentionally committed a "wholly individual and distinct wrong" which is "separate from the

claim in main."  Harmon v. Malden Hosp., 19 Mass. Discrim. L. Rptr. 157, 158 (1997); see also

Hayes v. Henri Bendel, 945 F. Supp. 374, 379 n.11 (D. Mass. 1996); Mahoney's mere

"acquiescence and presence" in Wellington's alleged discriminatory termination is insufficient to

hold her individually liable under c. 151B.  See Planned Parenthood League of Massachusetts,

Inc. v. Blake, 417 Mass. 467, 481 (1994)(applying this principle to a claim under the

Massachusetts Civil Rights Act).  Further, the Massachusetts Commission Against

Discrimination, to which the Supreme Judicial Court looks for guidance in interpreting ch. 151B,

see Chapin v. Univ. of Mass., 977 F. Supp. 72 (D. Mass. 1997), citing College-Town v. MCAD,

400 Mass. 156 (1987), imposes on plaintiffs the additional burden of showing that "the aider or

abetter shared [the principal offender's] intent to discriminate  . . . and that the aider or abetter

knew of his or her supporting role in an enterprise designed to deprive an individual of a right

guaranteed him or her under G.L. c. 151B."  Harmon, 19 Mass. Discrim. L. Rptr. at 158.  The

Amended Complaint contains no allegation that Mahoney harbored age animus against Runyon,

much less that she was aware that anyone else at Wellington did and that she participated in

terminating Runyon in order to intentionally further Wellington's discrimination.  No aiding and

abetting claim has been stated against Mahoney.

II.  Conclusion

For all of the foregoing reasons, Mahoney and Klar request that the Court dismiss Count

3 as to them, and Counts 4 and 5 of the Amended Complaint.

WELLINGTON MANAGEMENT COMPANY
LLP, ANNE MAHONEY and STEPHEN KLAR,

By their attorneys,


/s/  Ilene Robinson Sunshine
Ilene Robinson Sunshine (BBO #423000)
*isunshine@sandw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA  02109
(617) 338-2800 (phone)
(617) 338-2880 (fax)

Dated:  April 9, 2014




Certificate of Service

I hereby certify that this document(s) filed through the ECF system
will be sent electronically to the registered participants as identified
on the Notice of Electronic Filing (NEF) on April 9, 2014.

/s/  Ilene Robinson Sunshine