Plaintiff, Pro Se
125 High Street
Newton, MA, 02464

UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| Frederick L. Runyon, Plaintiff, )<br>vs. )<br>Wellington Management Company, )<br>LLP; Anne Mahoney; Stephen )<br>Klar; Defendants )<br> )<br> )<br> )<br>_____ ) | **CIVIL ACTION NO. 13-11236-DJC**<br><br>**PLAINTIFF'S OPPOSITION TO**<br>**DEFENDANTS' MOTION TO DISMISS**<br>**AMENDED COMPLAINT AS TO THE**<br>**INDIVIDUAL DEFENDANTS, PURSUANT**<br>**TO FED. R. CIV. P. 12(B)(6)** |

### I. Introduction

Plaintiff Frederick Runyon opposes the motion to dismiss of Defendants Anne Mahoney ("Mahoney") and Stephen Klar ("Klar"), (collectively with co-defendant Wellington Management Company, "the Defendants"). Mahoney and Klar have moved the Court under Fed. R. Civ. P. 12(b)(6) to dismiss Counts III, IV, and V of the Amended Complaint arguing that these counts fail to state claims against the individual defendants. For the following reasons, their argument is meritless and must be rejected.

### II. Background Facts

Since approximately 1980, Plaintiff has worked in the field of graphic design. His experience in this industry has included positions with magazine and newspaper publishers, advertising

agencies, design studios, and corporate in-house marketing communications departments. Since approximately 1995, Plaintiff worked in management-level positions in the graphic design industry. *First Amended Complaint ("FAC"), ¶6.*

In or about August 1998, Plaintiff began his employment with Wellington Management Company, LLP ("the Company") as Assistant Vice President, Design Manager ("Assistant Vice President"), reporting to the Director of the Company's Electronic Publishing Group, Joseph Kleber. At the time, he was approximately 46 years old. *Id., ¶8.*

In or about May 2003, in recognition of Plaintiff's successful performance, the Company promoted him to the position of Vice President. *Id., ¶11.*

In or about September 2006, in further recognition of his successful performance, the Company promoted him to the newly created position of Vice President, Corporate Design Manager. As part of this promotion, the Company significantly increased his annual salary and expanded his responsibilities to include, among other functions, supervising the design of all of the company's communications materials across all forms of media, including web, print, multimedia, and video. A replacement, Tom Gill, was hired to fill the Design Manager position vacated by Plaintiff as a result of this promotion. *Id., ¶12.*

At all relevant times, Plaintiff was responsible for overseeing all of the Company's creative design work including

Complaint - 2

work produced by, among other individuals: Julianna Anderson; Donna DeAlmeida; Christine Green; Roseanne Hall; Lisa Hennigan; Mark Kopulos; Andrew Mahoney; Kimberly Olson; Phil Sandoval; Jeff St. Pierre; Wendy Scholes; and Catherine Pipes; as well as design work created for video and all creative design work produced in the Company's global offices. *Id., ¶16.*

In or about December 2009, Anne Mahoney assumed the position of Director of Marketing Services, the department in which Plaintiff was employed. *Id., ¶¶14, 15.*

On or about June 1, 2011, Plaintiff's direct supervisor, Brian Johnson, called Plaintiff to an unscheduled meeting with him and his direct supervisor, Director of Marketing Services Mahoney, and Ms. Mahoney told Plaintiff his position had been eliminated and his employment with the company was terminated. *Id., ¶20.*

At no point during this meeting did Mr. Johnson or Ms. Mahoney indicate to Plaintiff that his performance was a factor in the termination decision. *Id., ¶21.*

At no point prior to his termination did Mr. Johnson or Ms. Mahoney or anyone at the Company inform Plaintiff that his job was in jeopardy. *Id., ¶22.*

At no point prior to his termination was there any comment or suggestion that Plaintiff was lacking skills needed to perform his duties, or was not meeting management's expectations. *Id., ¶23.*

At no point prior to his termination was Plaintiff provided guidance regarding management's expectations of him, or offered training and/or development opportunities to acquire or improve skills the Company may have deemed necessary. *Id., ¶24.*

Plaintiff's termination became effective on or about June 15, 2011. At the time of the termination, he was 59 years old. *Id., ¶25.*

The Company offered Plaintiff a separation agreement ("the Agreement"), which included a severance payment in exchange for a release of legal claims. The Company's Severance Policy (the "Policy") sets forth eligibility requirements, which includes "job elimination." The Policy sets forth a standardized formula for calculating the severance amount for employees who are terminated due to "job elimination." The severance amount offered to Plaintiff as part of the Agreement is consistent with the standardized formula set forth in the Policy. *Id., ¶¶29-32.*

Plaintiff understood the Agreement to be non-negotiable and did not attempt to modify its terms. *Id., ¶33.*

The Company never provided Plaintiff with a list, as required by law, of the other employees in his class, unit, or group who were terminated in the same employment termination program and were asked to sign severance agreements. *Id., ¶46.*

The Agreement gave Plaintiff 21 days to consider its terms, rather than 45 days as required by law. *Id., ¶47.*

Plaintiff reasonably relied on the Company's representation that his position had been eliminated in deciding to sign the Agreement on or about June 14, 2011. *Id., ¶48.*

Following Plaintiff's termination, the Company temporarily re-assigned designers Ms. Anderson, Ms. DeAlmeida, Ms. Hennigan, and Ms. Scholes to report to Mr. Johnson, and temporarily re-assigned designers Mr. Kopulos and Ms. Olson to report to Marketing Project Manager John Murphy. *Id., ¶49.*

In or about October 2011, the Department hired Betsy Salsman as Creative Manager. *Id., ¶50.* The designers temporarily assigned to Mr. Johnson and Mr. Murphy were permanently assigned to Ms. Salsman. *Id., ¶67.*

Ms. Salsman is approximately 20 years younger than Plaintiff. Ms. Salsman's primary duties are so similar to those performed by Plaintiff that they are essentially identical. *Id., ¶¶51, 52.*

According to her resume, Ms. Salsman's job history and work experience are so similar to those of the Plaintiff that for practical purposes they are the same. *Id., ¶53.*

Ms. Salsman oversees the creative design work of the individuals and other groups whose work Plaintiff supervised before his termination. *Id., ¶54.*

The Company terminated Plaintiff and/or failed to promote him due to his age. If Plaintiff had known that the Company did

not actually eliminate his position, but had in fact replaced or intended to replace Plaintiff with a younger employee to perform essentially the same duties and responsibilities as he performed, Plaintiff would not have signed the Agreement. *Id., ¶55.*

### III. Standard of Review

"'In considering a motion to dismiss, a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff.' *Aronson v. Advanced Cell Tech., Inc., 902 F. Supp. 2d 106, 112 (D. Mass. 2012)* (quoting *Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)*. The court may grant dismissal only if the plaintiff has failed to allege 'a plausible entitlement to relief.' *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)*. Accordingly, 'the complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."' SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)). 'If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal.' Id." *Tutor Perini Corp. v. Banc Of America Securities Llc, Civil Action No. 11-10895-NMG (D. Mass. Sept. 17, 2013).*

Even where a complaint "is not a model of the careful drafter's art, ... under the Federal Rules of Civil Procedure, a complaint need not pin [a] plaintiff's claim for relief to a

precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer, 131 S.Ct. 1289, 179 L. Ed. 2d 233, 242 (2011)* (reversing and remanding dismissal of plaintiff's § 1983 case), referencing 5 C. Wright & A. Miller, Federal Practice & Procedure § 1219, pp. 277-278 (3d ed. 2004 and Supp. 2010).

"As *Ocasio-Hernández* makes clear, dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint satisfies the two-pronged requirement in Rule 8(a)(2) of 'a short and plain statement of the claim showing that the pleader is entitled to relief.' *Id. at 8* (citing Fed.R.Civ.P. 8(a)(2)). As to the first prong, a 'short and plain' statement 'needs only enough detail to provide a defendant with "fair notice of what the ... claim is and the grounds upon which it rests."' *Id*. (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). However, in order to satisfy the second prong of showing an entitlement to relief, 'a complaint must contain enough factual material "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."' *Id*. (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955)". *Sisco v. DLA Piper LLP, 833 F. Supp. 2d 133 - Dist. Court, D. Massachusetts 2011.*

Federal Rules Of Civil Procedure, Rule 9(b) requires that "'...the circumstances constituting fraud or mistake shall be

stated with particularity.' This heightened pleading standard require[s] a plaintiff to set forth with particularity in his or her complaint, the 'who, what, when, where and how of the alleged fraud.' A plaintiff must allege with specificity the circumstances of the fraud, but need not plead all of the evidence or facts that support those allegations." *United States ex rel. Rost v. Pfizer, Inc.*, 446 F. Supp. 2d 6, 25 (D. Mass. 2006). "A plaintiff may make allegations of fraud on the basis of personal knowledge or on 'information and belief.'" *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226, (1st Cir. 2004).

### IV. Argument

1. Count III Adequately Alleges Fraudulent Misrepresentation Against Mahoney.

   The allegations in the Amended Complaint contain the "who, what, where, when, and how" of the fraud claim in Count III against Mahoney and Wellington.[1] Mahoney and Wellington (who) represented to Plaintiff that his position was being eliminated (what) when they informed him in Wellington's offices about his termination in or around June 2011 (where and when). The representation was false because he was actually replaced by Betsy Salsman, a much younger employee who performs essentially the same duties and responsibilities as he did (how), and

---

[1] Plaintiff agrees that he does not have sufficient allegations of fraud against Klar and thus agrees to the dismissal of Count III against him.

Plaintiff knows from his experience with the company that the length of time involved in the hiring process creates a reasonable inference that plans to replace Plaintiff must have been in progress before he was terminated. Plaintiff fails to understand how his allegations could be more specific than this.

Defendants contend, however, that, Counts III and IV fail against Mahoney because neither alleges any specific illegal actions by her. Defendants imply that Plaintiff must have personal knowledge of the precise actions taken by a defendant to allege fraud. This is not so. "... under Rule 9(b), a plaintiff may make allegations of fraud on the basis of personal knowledge or on 'information and belief.'" *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226, (1st Cir. 2004). The complaint must "set forth the source of the information and the reasons for the belief." *Roxbury/South End Tenants' Council, Inc. v. Cornerstone Corp., 573 F. Supp. 2d 359, 363 (D. Mass. 2008)*, citing *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991).

As Defendants concede, the amended complaint alleges the source of the information — Plaintiff — and the reasons for the belief — that he has personal experience in establishing new positions and hiring candidates. Further, he demonstrated the importance and relevance of this experience through detailed allegations about the process of developing new positions and hiring employees for such positions.

Defendants are simply wrong that Plaintiff must have personal knowledge of the fraudulent act. Since he was not directly involved in the creation of the new position and hiring of the candidate, the Plaintiff "cannot be expected to have personal knowledge of the facts constituting the fraud [and as a result] the particularity requirement is satisfied if the allegations are accompanied by a statement of the facts upon which the belief is founded." *Kuney Int'l, S.A. v. DiIanni, 746 F. Supp. 234, 237 (D. Mass. 1990)*, citing *C. Wright & A. Miller, Federal Practice and Procedure § 1298 & n. 95 (1969)*.

2. Count IV Adequately Alleges Interference With Plaintiff's Rights Under M.G.L. c. 151B Against Mahoney and Klar.

Unlike with a heightened pleading requirement, allegations of discrimination are subject to *Iqbal/Twombly* plausibility standard. See *Sisco v. DLA Piper LLP, 833 F. Supp. 2d 133, 140-141 (D. Mass. 2011)*

MGL 151B, Section 4 (4A) reads: "[It shall be an unlawful practice:] For any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter...." The law does not require a Complaint to include detailed descriptions of specific behaviors or actions that result in the interference prohibited by the law.

By its plain terms, the interference provision applies not only to employers acting through their principals and agents, but

also to individuals as. M.G.L. c. 151B, § 4(4A) (applying to "any person who aids and abets discriminatory or retaliatory conduct prohibited under Chapter 151B, as well as to any person who interferes with another's right to work free of unlawful discrimination and retaliation." *Ruffino v. State St. Bank & Trust Co., 908 F. Supp. 1019, 1048 (D. Mass. 1995))*

In Count IV and the allegations supporting it, Plaintiff has alleged adequately that Department Manager Mahoney and her supervisor Klar interfered with his enjoyment of rights protected by G. L. c. 151B, specifically Plaintiff's right to be free of age discrimination in opportunities for employment or promotion. Mahoney informed Plaintiff of the decision to terminate him and falsely told him his position had been eliminated. This is clearly interference with Plaintiff's right under Chapter 151B to be protected against age discrimination.

It is a reasonable inference that she was involved in the planning to terminate Plaintiff and replace him with a younger employee. Similarly, it is a reasonable inference that as Mahoney's supervisor, whose approval was required, Klar also was involved in the planning to terminate Plaintiff, thereby interfering with Plaintiff's right under Chapter 151B to be protected against age discrimination. See *Bendell v. Lemax, Inc. 25 MDLR 106;, 2003 Mass. Comm. Discrim. LEXIS 25, 6 (March 6, 2003*).

3. Count V Adequately Alleges Aiding and Abetting Under M.G.L. c. 151B Against Mahoney and Klar.

Like the interference provision, aiding and abetting under Chapter 151B, § 4(5) applies to individuals as well as employers. When a supervisor actively assists in planning or carrying out an adverse action that unlawfully discriminates under Chapter 151, the supervisor may be liable for aiding and abetting.

The MCAD's application of the aiding and abetting provision was endorsed by the Massachusetts Appeals Court in *Beaupre v. Cliff Smith & Associates,* 50 Mass. App. Ct. 480 (2000). *Beaupre* found that the MCAD's application was "entirely consistent with traditional principles of accessorial liability." *Id. at 50*. Accessory liability holds a person "legally accountable for any conduct he performs or causes to be performed in the name of the corporation ... or in its behalf to the same extent as if it were performed in his own name or behalf" and "makes certain that the corporate agent will not escape liability because all or part of his conduct is performed through or in the name of the corporation." *Id.* "The most notable MCAD decisions in this respect are *Hope v. San-Ran, Inc., 8 M.D.L.R. 1195, 1210-1211 (1986)* (supervisor who perpetrated sexual harassment of terminated employee and manager who did not act on employee's complaint held jointly and severally liable for their separate acts of aiding and abetting the vicariously liable corporate employer's illegal discrimination); *Harmon v. Malden Hosp., 19 M.D.L.R. 157, 157–158 (1997)* (opining that individuals who actively perpetrate or assist in the acts forbidden by §§ 4[4], 4[4A], and 4[5] can be held separately liable as aiders and abettors of the vicariously liable corporate employer deemed

responsible for the discrimination against the employee under standard concepts of 'accessory liability')" *Id., note 18.*

Mahoney's false statement to Plaintiff that his position was being eliminated when she intended to replace him with a younger employee is a separate and distinct wrong from the claim that Wellington terminated him due to his age. Further, it can reasonably be inferred that Klar, as Mahoney's supervisor, reviewed Mahoney's plan to terminate Plaintiff and gave her approval to proceed. These are acts separate from Plaintiff's actual termination and are properly alleged to be aiding and abetting. See *Harmon v. Malden Hosp., 19 M.D.L.R. 157, 157-158 (1997).*

Contrary to Defendants' argument, Plaintiff alleged in the amended complaint that Mahoney herself knew that she was not truly eliminating Plaintiff's position, and knew that she was going to replace Plaintiff with a younger employee. Since she was not Plaintiff's employer, she obviously did not terminate him, and thus committed a separate and distinct wrong from Wellington's act of unlawful termination.

## V. Conclusion

Defendants say, "...none of these counts against [Klar] can survive since there is no allegation that he engaged in any conduct at all, much less any that violated any of Runyon's rights."

As the primary actor in the planning and execution of Plaintiff's termination, manager and decision-maker Mahoney knowingly misrepresented to Plaintiff that his position had been eliminated, inducing Plaintiff to sign a waiver releasing rights, as alleged in Count III; she interfered with the enjoyment of Plaintiff's protected rights, as alleged in Count IV; and she aided and abetted discriminatory conduct, as alleged in Count V.

It is reasonably inferred that Klar, as Mahoney's supervisor, was an active participant in the planning of, and was the individual who gave approval for Plaintiff's termination. Klar interfered with the enjoyment of protected rights, as alleged in Count IV; and he aided and abetted discriminatory conduct, as alleged in Count V.

The facts as pleaded raise a reasonable expectation that discovery will reveal evidence of illegal conduct. The details of Defendants' conduct will be shown in emails and other documentation between Klar, Mahoney, Human Resources, and others.

## VI. Request to Amend Complaint

"Fed.R.Civ.P. 15(a) provides, inter alia, that 'a party may amend his pleading once as a matter of course at any time before a responsive pleading is served....' We have stated that '"[a] motion to dismiss is not a 'responsive pleading' within the meaning of the Rule. Neither the filing nor granting of such a motion before answer terminates the right to amend; an order of dismissal denying leave to amend at that state is improper...."' Mayes, 729 F.2d at 607 (quoting Breier v. Northern California

Bowling Proprietors' Association, 316 F.2d 787, 789 (9th Cir.1963)). If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency. Bonanno v. Thomas, 309 F.2d 320, 322 (9th Cir.1962)." *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, (9th Cir. 1986)*

If the Court finds that Plaintiffs' allegations are insufficient, the appropriate remedy is amendment, not dismissal, and Plaintiff respectfully asks for the Court's Approval to Amend the Complaint to modify or supplement any and all claims, including claims 3, 4, and 5, with sufficient factual information to remedy any deficiencies, and to correct other inadequacies.

Dated this 7th day of May, 2014

/s/ Frederick L. Runyon

Frederick L. Runyon, Plaintiff

*Pro se*

125 High Street

Newton, MA 02464

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 7, 2014.

/s/ Frederick L. Runyon

Frederick L. Runyon, Plaintiff

*Pro se*