UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREDERICK L. RUNYON,<br><br>Plaintiff,<br><br>v.<br><br>WELLINGTON MANAGEMENT COMPANY, LLP, ANN MAHONEY and STEPHEN KLAR,<br><br>Defendants. | Civil Action No. 13-cv-11236-DJC |

MEMORANDUM AND ORDER

CASPER, J.                                                                                                        March 20, 2015

I.      Introduction

Plaintiff Frederick L. Runyon ("Runyon") filed this lawsuit against Defendants Anne Mahoney ("Mahoney"), Stephen Klar ("Klar") (collectively, the "Individual Defendants") and Wellington Management Company, LLP ("Wellington") (together with the Individual Defendants, the "Defendants") alleging age discrimination in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 *et seq.*, and Mass. Gen. L. c. 151B ("c. 151B"). D. 21. Runyon also alleges that Defendants fraudulently induced him to execute a general release of his claims. Id. The Individual Defendants have moved to dismiss the claims

1

against them.[1]  D. 23.  For the reasons stated below, the Court ALLOWS IN PART and DENIES IN PART the motion.

## II.     Standard of Review

In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).  "[T]he plaintiff need not demonstrate she is likely to prevail" at this stage, only that her claims are facially plausible.  García-Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013).  To state a plausible claim, a claim need not contain detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This determination requires a two-step inquiry.  García-Catalán, 734 F.3d at 103.  First, the Court must distinguish the factual allegations from the conclusory legal allegations in the complaint.  Id.  Second, taking Runyon's factual allegations as true, the Court should be able to draw "the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)).

When deciding a motion to dismiss, the First Circuit has "emphasize[d] that the complaint must be read as a whole," and that circumstantial evidence may be sufficient to surpass the plausibility threshold.  Id.  At bottom, a claim must contain sufficient factual matter that, accepted as true, would allow the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citation omitted).  However, "[i]n determining whether

---

[1] Wellington does not participate in this motion.  See D. 24 at 1 n.1.

2

a [pleading] crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" Id. (internal citations omitted). "In this process, the fact that the plaintiff filed the complaint *pro se* militates in favor of a liberal reading." Rodi v. S. New England Sch. Of Law, 389 F.3d 5, 13 (1st Cir. 2004) (citing Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000) (explaining that "courts hold *pro se* pleadings to less demanding standards than those drafted by lawyers")).

## III. Factual Background

The following facts are alleged in the amended complaint, D. 21, and are taken as true for the purposes of this motion.

Runyon has worked in the field of graphic design since 1980. D. 21 ¶ 6. In 1998, at the age of forty-six, Runyon began working at Wellington as Assistant Vice President, Design Manager. Id. ¶ 8. Runyon was responsible for developing the design and communication materials Wellington used to target clients. Id. ¶ 9. Runyon also worked on the design and execution of internal materials and managed a staff of Wellington designers, establishing best practices, evaluating performance and making staffing decisions. Id. In 2003, Runyon was recognized for his performance and promoted to Vice President. Id. ¶ 11. Runyon was promoted again in 2006 to a newly created position – Vice President, Corporate Design Manager. Id. ¶ 12. As a result of this new position, Runyon's responsibilities and salary increased significantly. Id. In his new position, Runyon supervised the design of all of Wellington's communication materials, including web, print, multimedia and video materials. Id. During his time at Wellington, Runyon never received a performance review indicating that his skills were lacking or that his job performance was inadequate. Id. ¶¶ 21-24.

In 2008, Wellington reorganized and the company underwent a reduction in force. Id. ¶ 13. Although Runyon's responsibilities were not affected by this restructuring, Runyon's supervisor changed and Runyon began reporting to the Manger of Editorial Services, Brian Johnson. Id. In 2009, Johnson's supervisor left the company and Johnson began reporting to Anne Mahoney. Id. ¶ 15.

In 2010, Runyon met with Johnson "to discuss workload and to determine what responsibilities might be delegated to [Runyon's] staff." Id. ¶ 17. At this meeting, Johnson suggested that one of Runyon's staff members might be reluctant to take on new responsibilities because of her age. Id. ¶ 18. The employee was over fifty-years old at the time. Id. ¶ 19. In another meeting later that year, Johnson made similar comments to Runyon about another one of his employees who was over fifty-years old. Id.

In June 2011, Runyon was called into an unscheduled meeting with Johnson, his direct supervisor, and Mahoney, his indirect supervisor. Id. ¶ 20. Mahoney told Runyon that his position was being eliminated and that he was being terminated. Id. Wellington offered Runyon a separation agreement, which included a severance payment in exchange for the release of legal claims. Id. ¶ 29. Under Wellington's severance policy, "job elimination" is one of the eligibility requirements for a severance offer. Id. ¶ 30. Runyon's severance package was consistent with the standardized formula contained in Wellington's policy, and Runyon considered the offer to be nonnegotiable. Id. ¶¶ 32-33. At the time of his termination, Runyon was fifty-nine years old. Id. ¶ 25.

Runyon relied on Mahoney and Johnson's representation that his position had been eliminated in deciding to sign the separation agreement. Id. ¶ 48. Wellington did not provide Runyon with the names of other employees who were terminated in the same group and who

4

were also asked to sign severance agreements. Id. ¶ 46. Three months after Runyon's June 2011 termination, Wellington hired Betsy Salsman as Corporate Design Manager. Id. ¶¶ 63-64. Salsman's job title, responsibilities and experience "do not differ from [Runyon's] in any meaningful way." Id. ¶ 78; see also id. ¶¶ 74-77. Furthermore, a number of Runyon's staff members, who were temporarily reassigned when Runyon was terminated, were permanently assigned to Salsman. Id. ¶¶ 65-67. At the time she was hired, Salsman was thirty-two years old. Id. ¶ 64.

## IV. Procedural History

Runyon instituted this action on May 21, 2013. D. 1. Defendants moved to dismiss on June 24, 2013. D. 7. On March 12, 2014, the Court granted in part and denied in part Defendants' motion to dismiss, id., dismissing Runyon's ADEA claims against Mahoney and Klar, dismissing without prejudice Runyon's fraud claim and denying Defendants' motion to dismiss Runyon's claims under Mass. Gen. L. c. 151B. D. 19. Runyon then filed an amended complaint, asserting age discrimination in violation of the ADEA, 29 U.S.C. § 621, *et seq.*, against Wellington (Count I), age discrimination under c. 151B against Wellington (Count II), fraudulent inducement (Count III), interference with Runyon's rights under c. 151B against Maloney and Klar (Count IV), aiding and abetting pursuant to c. 151B against Maloney and Klar (Count V) and for declaratory judgment (Count VI). D. 21. Mahoney and Klar have now moved to dismiss the claims against them. D. 23. The Court heard the parties on the pending motion and took these matters under advisement. D. 35.

## V. Discussion

### A. Runyon Has Sufficiently Alleged His Fraudulent Misrepresentation Claim against Mahoney (Count III)

5

Runyon alleges that Mahoney[2] fraudulently induced him to sign a severance agreement, by falsely representing to him that Wellington was eliminating his position, knowing that the company was keeping the position and replacing Runyon with a younger employee. D. 21 ¶ 60. Under Massachusetts law, to state a claim for fraudulent misrepresentation, Runyon must allege that Mahoney: (1) made a false representation of material fact; (2) with knowledge as to its falsity; (3) for the purpose of inducing Runyon to act; (4) and that Runyon reasonably relied upon Mahoney's representation as true and acted upon it; and (5) to his detriment. Taylor v. Am. Chemistry Council, 576 F.3d 16, 31 (1st Cir. 2009) (quoting Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458 (2002)). As to the second element, Runyon must demonstrate that Mahoney's fraudulent intent was contemporaneous with the misrepresentation. Sargent v. Tenaska, Inc., 914 F. Supp. 722, 731 (D. Mass. 1996), aff'd, 108 F.3d 5 (1st Cir. 1997). Mahoney challenges the second element, arguing that Runyon has not alleged specific facts suggesting "that Mahoney knew or should have known on the date she notified Runyon that his position had been eliminated that she was uttering a falsehood." D. 24 at 5.

Complaints alleging fraud must be plead with particularity. Fed. R. Civ. P. 9(b). "In such cases, the pleader usually is expected to specify the who, what, where, and when of the allegedly false or fraudulent representation." Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004). This heightened pleading requirement "extends only to the particulars of the allegedly misleading statement itself," however, and "other elements of fraud, such as intent and knowledge, may be averred in general terms." Rodi v. S. New England Sch. Of Law, 389 F.3d 5, 15 (1st Cir. 2004). Indeed, the Supreme Judicial Court has consistently

---

[2] Runyon concedes that "he does not have sufficient allegations of fraud against Klar" and "agrees to the dismissal of Count III" against him. D. 28 at 8 n.1. Accordingly, the Court DISMISSES Runyon's fraudulent misrepresentation claim (Count III) against Klar.

stated that "[t]o establish fraudulent intent 'it is sufficient to show proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge.'" Armstrong Pharm., Inc. v. Micron Techs., Inc., No. 09-cv-11197-RWZ, 2010 WL 745057, at *1 (D. Mass. Feb. 25, 2010) (quoting Russell, 437 Mass. at 458). With regard to the knowledge element, then, Runyon is only required to "set forth specific facts that make it reasonable to infer that [Mahoney] knew that [the] statement was materially false or misleading." Goebel v. Schmid Bros., Inc., 871 F. Supp. 68, 74 (D. Mass. 1994) (citing Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992)).

In his original complaint, Runyon alleged only that, at the time of his discharge, Mahoney and Johnson told him that his job was being eliminated and asked Runyon to sign a release of his claims, but subsequently hired a younger woman into a position identical to the one he vacated. D. 1. The original complaint alleged no facts to support the inference that Mahoney knew, or should have known, that Runyon's position was not in fact eliminated. See D. 19. Indeed, Runyon's original complaint contained only six references to Mahoney and Klar. D. 1 ¶¶ 4, 15, 20, 22, 27.

In contrast, in his amended complaint Runyon includes seven new pages detailing Wellington's hiring practices, including the necessary timeline for creating and filling a new position, D. 21 ¶ 61-64, comparing Runyon's qualifications and job responsibilities to his replacement's, id. ¶¶ 69-78, and adding additional detail regarding the temporary reassignment of Runyon's group members to other supervisors before they were permanently reassigned to Runyon's replacement, id. ¶¶ 65-68. Runyon alleges that these additional allegations, considered together, indicate that when Mahoney told Runyon that his position had been eliminated, she

7

must have known that the representation was false. Id. ¶ 79. Specifically, Runyon alleges that as a result of his thirteen years of experience as a manager at Wellington he has personal experience developing new positions and hiring candidates for the company. D. 21 ¶¶ 61-62. Runyon explains, in some detail, that Wellington's "process for creating a new position and hiring into it is time consuming and burdensome," including multiple interviews and visits to the company, as well as a "rigorous background check." Id. ¶ 62. Runyon alleges that the process "usually takes months from preliminary discussions to the day a new hire begins employment." Id. Runyon's younger replacement, Salsman, began working at Wellington three months after Runyon was terminated. Id. ¶ 64. Based on his knowledge of Wellington's hiring practices, Runyon contends that Salsman's start date "indicates that Mahoney had planned to replace [him] some time before telling him his position was being eliminated." Id. ¶ 64.

Furthermore, Runyon alleges that several of his direct reports were temporarily reassigned to other managers before being permanently assigned to Runyon's replacement. Id. ¶¶ 65-67. Runyon argues that the fact "[t]hat those designers were given only temporary reporting assignments after [Runyon's] termination raises the reasonable inference that before telling [Runyon] his position was being eliminated, Mahoney had plans to hire a replacement to whom those designers would be permanently assigned." Id. ¶ 68. Mahoney argues that, to make the inference sought by Runyon, the Court would first have to make the assumption that the hiring practices described by Runyon were used in this instance. D. 24 at 6. Taking Runyon's allegations as true for the purposes of this motion, however, these allegations are sufficient to "make it reasonable to infer," Goebel, 871 F. Supp. at 74, that Mahoney knew when she notified Runyon that his position had been eliminated that she was uttering a falsehood.

Mahoney also disputes that Runyon adequately alleges inducement and harm, arguing that Runyon has not sufficiently alleged "that Mahoney's alleged misrepresentation was made for the purpose of inducing Runyon to sign a severance agreement, and that he was injured by doing so." D. 24 at 6-7. Runyon alleges, however, that Wellington terminated him because of his age and that if Runyon had known that Wellington was not actually eliminating his position, but was replacing him with a younger employee, that he would not have signed the severance agreement releasing his claims. D. 21 ¶¶ 55, 60. Runyon further alleges that the release of claims has caused him damages. Id. ¶ 60. As noted above, Rule 9(b)'s heightened pleading requirement extends only to the allegedly misleading statement itself while intent and reliance may be averred in general terms. See Rodi, 389 F.3d at 15; Sebago, Inc. v. Beazer E., Inc., 18 F. Supp. 2d 70, 86 (D. Mass. 1998) (finding allegations of reliance in fraud claim were properly pleaded where plaintiffs alleged that they had "read [defendants'] brochure . . . and in reliance on the representations purchased and installed the defendants' [product]"). Accordingly, Runyon has plausibly alleged a claim for fraudulent misrepresentation against Mahoney.

**B.** **Interference with Runyon's Rights under Mass. Gen. L. c. 151B (Count IV)**

Next, Mahoney and Klar argue that Runyon has not alleged sufficient facts to suggest that they interfered with Runyon's rights under c. 151B. Under Mass. Gen. Laws c. 151B, § 4(1B), it is unlawful for an employer, "because of the age of any individual . . . to discharge from employment such individual . . . unless based upon a bona fide occupational qualification." Mass. Gen. Laws c. 151 B, § 4(1B). This protection applies to individuals over forty years old. Mass. Gen. Laws c. 151B, § 1(8). Chapter 151B § 4(4A), in turn, makes it unlawful to "coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected" by c. 151B. Mass. Gen. Laws c. 151B, § 4(4A). "There is no question that

G.L. c. 151B, § 4(4A), prohibits interference with an employee's right to work in an environment free of unlawful [age] discrimination." Araujo v. UGL Unicco-Unicco Operations, No. 13-13225-GAO, 2014 WL 5242888, at *9 (D. Mass. Sept. 30, 2014) (quoting McLaughlin v. City of Lowell, 84 Mass. App. Ct. 45, 72 (2013)).

The Supreme Judicial Court has concluded that interference under c. 151B, § 4(4A), "is appropriately considered with, and interpreted in light of, the words 'coerce,' 'intimidate,' and 'threaten' that precede it, and that each implies some form of intentional conduct." Lopez v. Commonwealth, 463 Mass. 696, 708 (2012). To establish a claim for interference under c.151B, § 4(4A), then, Runyon must show that Mahoney and Klar interfered with his rights in deliberate disregard of those rights. Furtado v. Standard Parking Corp., 820 F. Supp. 2d 261, 278-79 (D. Mass. 2011) (citing Canfield v. Con–Way Freight, Inc., 578 F. Supp. 2d 235, 242 (D. Mass. 2008)). "Deliberate disregard requires an intent to discriminate." Canfield, 578 F. Supp. 2d at 242 (internal quotation marks omitted). However, "the element of intentionality is satisfied where it is shown that a defendant knowingly interfered with the plaintiffs' right to be free from discrimination." McLaughlin v. City of Lowell, 84 Mass. App. Ct. 45, 73 (citing Lopez, 463 Mass. at 710-11), review denied, 466 Mass. 1112 (2013). "In cases based on circumstantial evidence of discrimination, individuals may be held liable if: (1) they had the authority or the duty to act on behalf of the employer; (2) their action or failure to act implicated rights under the statute; and (3) there is evidence articulated by the complainant that the action or failure to act was in deliberate disregard of the complainant's protected rights allowing the inference to be drawn that there was intent to discriminate or interfere with the complainant's exercise of his rights." Furtado, 820 F. Supp. 2d at 278.

### a) Runyon Has Sufficiently Alleged His Interference Claim against Mahoney

Here, it is uncontested that Mahoney, as the Director of Marketing Services, indirectly supervised Runyon and, as such, was in a position to act on behalf of Wellington. D. 21 ¶ 15; D. 24 at 2. Runyon further alleges, as discussed in greater detail above, that Mahoney actually acted on behalf of the company by personally performing the alleged discriminatory act, terminating Runyon based upon his age, D. 21 ¶¶ 20, 55, 59, with direct knowledge that the company planned to replace him with a much younger employee, id. ¶¶ 64, 79, 82. As such, Runyon has plausibly alleged that Mahoney's act implicated his right to be free from age discrimination and showed a "deliberate disregard" of that right. Furtado, 820 F. Supp. 2d at 278; see also Moser v. Cheney, No. 11-cv-4357-F, 2014 WL 3048783 at *9-10 (Mass. Super. May 4, 2014) (quoting Woodason v. Norton Sch. Comm., No. 98-BEM-0624, 2003 WL 554332 at *4 (MCAD Feb. 19, 2003)) (emphasis and quotation mark omitted) (noting that "[w]here the individual is the alleged perpetrator, she may be charged with interfering with one's exercise or enjoyment of the right to a non-discriminatory, harassment free, workplace"). Mahoney argues that Runyon did not allege that "she made, participated in or influenced the decision to fire him," D. 24 at 7. Runyon does allege, however, that Mahoney participated in his firing, claiming that she was the individual who informed him that his "position had been eliminated and his employment with the company was terminated." D. 21 ¶ 20. Runyon further alleges that Mahoney made these statements knowing of their falsity, having "planned to replace [Runyon]" with a younger employee "some time before telling him his position was being eliminated." Id. ¶ 60. Accordingly, the Court concludes that Runyon has pleaded sufficient facts to sustain an interference claim against Mahoney, and the Court will not, at the pleading stage, dismiss Runyon's § 4(4A) claim against Mahoney.

### b) Runyon Has Not Sufficiently Alleged His Interference Claim against Klar

As to Klar, however, Runyon has failed to allege any facts supporting an interference claim. Indeed, the only information concerning Klar in the entire amended complaint is that he "is an individual and resident of Massachusetts." D. 21 ¶ 4. In his complaint, Runyon does not identify Klar's position within the company or allege that Klar held a supervisory position with authority to act on behalf of Wellington. Nor does Runyon allege that Klar was aware of Runyon's termination or the subsequent hiring of Salsman. In his opposition to the present motion, Runyon argues for the first time that because Klar is Mahoney's supervisor "it is a reasonable inference that [Klar], whose approval was required . . . was involved in the planning to terminate [Runyon]" and, therefore, Klar interfered with Runyon's rights under c. 151B. D. 28 at 11. Absent specific allegations in the complaint that Klar acted in deliberate disregard of Runyon's rights, however, Runyon's interference claim cannot survive. Furtado, 820 F. Supp. 2d at 278. Unlike his claims against Mahoney, Runyon does not contend that Klar was the alleged perpetrator of Wellington's alleged discrimination. Furthermore, Runyon does not allege any facts to suggest that Klar had any role whatsoever in the decision to terminate Runyon, let alone an awareness of the underlying discriminatory intent. Without more, the Court cannot find that Klar possessed the requisite intent to discriminate or interfered with Runyon's rights under c. 151B in deliberate disregard of those rights. Id. at 278-79. Accordingly, the Court concludes that Runyon has not alleged a plausible interference claim against Klar.

### C. Aiding and Abetting under Mass. Gen. L. c. 151B (Count V)

Mahoney and Klar also contend that Runyon has failed to state a claim for aiding and abetting under c. 151B, § 4(5), arguing that Runyon has failed to allege that either defendant "intentionally committed a wholly individual and distinct wrong which is separate from the

claim in main." D. 24 at 5, 8 (quoting Harmon v. Malden Hosp., 19 Mass. Discrimination L. Rep. 157, 158 (1997)) (internal quotation marks omitted). Mahoney and Klar further argue that Runyon has not alleged that they shared the company's intent to discriminate. Id.

The aiding and abetting provision of c. 151B "makes it unlawful for any person, whether an employer or an employee or not, to aid [or] abet . . . the doing of any of the acts forbidden under [G.L. c. 151B] or to attempt to do so." Lopez, 463 Mass. at 713 (omission and alterations in original) (quotation mark omitted). To prevail on a claim for aiding and abetting under c. 151B, § 4(5), Runyon must show: "(1) that the defendant committed a wholly individual and distinct wrong . . . separate and distinct from the claim in main; (2) that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender; and (3) that the aider or abetter knew of his or her supporting role in an enterprise designed to deprive [the plaintiff] of a right guaranteed him or her under G.L. c. 151B." Id. at 713 (omission and alteration in original) (quoting Harmon, 19 Mass. Discrimination L. Rep. at 158) (internal quotation marks omitted). "Moreover, as with a claim for interference, a claim of aiding and abetting requires showing a defendant's intention to provide substantial, supporting assistance to intentional conduct in violation of the Massachusetts General Laws chapter 151B." Furtado, 820 F. Supp. 2d at 279 (citing Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 481 (1994); Kyte v. Philip Morris Inc., 408 Mass. 162, 168 (1990)).

      a)     Runyon Has Sufficiently Alleged His Aiding and Abetting Claim against Mahoney

Runyon has alleged that Wellington discriminated against him, terminating him due to his age and hiring a younger replacement, and that Mahoney, in furtherance of this alleged discrimination, fraudulently misrepresented to Runyon that his job was being eliminated. D. 21 ¶¶ 55, 60, 64. As such, the complaint contains distinct allegations supporting the underlying

discrimination claim and a separate and distinct claim against Mahoney, fraudulent inducement. Furthermore, as discussed above, Runyon has alleged sufficient facts to raise the inference that, by acting on behalf of the company as the perpetrator of the alleged discrimination, Mahoney intended to discriminate against Runyon. Accordingly, at the pleading stage, the Court will not dismiss Runyon's aiding and abetting claim against Mahoney.

        b)      <u>Runyon Has Not Sufficiently Alleged His Aiding and Abetting Claim against Klar</u>

As discussed above, however, Runyon has not alleged any facts suggesting intent to discriminate on the part of Klar. Furthermore, Runyon has not alleged that Klar committed any separate and distinct wrong apart from the underlying discrimination, and thus, Runyon has not sufficiently pleaded a claim for aiding and abetting against Klar.

## VI. Conclusion

For the foregoing reasons, the Court DENIES the Individual Defendants' motion, D. 23, as to Runyon's claims against Mahoney, but ALLOWS the motion, D. 23, to the extent it seeks dismissal of Counts III-V against Klar. Accordingly, all claims against Klar (Counts III-V) are DISMISSED with prejudice.

      **So Ordered.**

                                          /s/ Denise J. Casper
                                          United States District Judge